```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                   CHARLOTTE DIVISION
                     3:04CV433-2-V
                     (3:02CR23-V)
```

| | | |
|---|---|---|
| **FRED A. NEAL, JR.,** | ) | |
|     **Petitioner,** | ) | |
| | ) | |
|     v. | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
|     **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before this Court upon petitioner's "Motion to Vacate, Set Aside, or Correct" under 28 U.S.C. §2255," filed September 1, 2004; and on the "Government's Response And Motion For Summary Judgment," filed November 13, 2004.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on February 5, 2002, a two-Count Bill of Indictment was filed, charging the petitioner with having been a convicted felon in possession of a firearm on two separate occasions, all in violation of 18 U.S.C. §922(g)(1) (Counts One and Two).

On August 22, 2002, the petitioner appeared before the Court and entered "straight-up" guilty pleas to the two gun charges. On that occasion, the Court conducted its standard Plea & Rule 11 Proceeding. After engaging the petitioner in a lengthy colloquy to ensure that his guilty pleas were intelligently and intention-

ally being tendered, the Court conditionally accepted the petitioner's pleas.

Next, on September 30, 2002, the United States Probation Office prepared a Pre-Sentence Report in which it set forth the factual details of the subject offenses. According to that Report, on August 20, 2001, Charlotte-Mecklenburg Police Officers responded to a "shots fired" call. Upon their arrival, a woman advised that a cream colored Cadillac had tailgated her vehicle into her neighborhood; that such vehicle had parked down the street from her home; and that when she attempted to obtain the license plate information as requested by the police dispatcher, the driver stepped out of the Cadillac and shot at her.

Consequently, when police arrived and observed the vehicle leaving the area, they stopped the car and arrested the petitioner, the driver, as he fit the description of the shooter. Following his arrest, the police located a 9mm semi-automatic rifle under the driver's seat (along with 50.5 grams of marijuana and two digital scales). The petitioner admitted having fired the rifle, but claimed it was an attempt to discourage a trespasser. Upon his arrest, the petitioner was charged under North Carolina law with carrying a concealed weapon assault, possession of marijuana, and possession of drug paraphernalia.

The facts underlying the second charge relate to an incident which occurred about five months later on January 24, 2002. On

that occasion, Charlotte-Mekclenburg Police Officers were patrolling the Grier Heights neighborhood when they observed a Toyota Camry with an Indiana license plate pull into the driveway of a known drug house. When the officers passed the vehicle, they recognized the petitioner as the driver of the vehicle. The officers followed the petitioner when he left the drug house, observed him commit a series of minor traffic violations; and conducted a traffic stop on the vehicle.

Upon stopping the vehicle, the officers determined that the petitioner had an outstanding warrant for his arrest, and so they arrested him on that warrant. The officers then conducted a search incident to the petitioner's arrest, at which point they discovered a .45 caliber semi-automatic pistol, 260 grams of marijuana, a set of digital scales, a large marijuana cigarette, and several partially smoked marijuana cigarettes. The petitioner subsequently was charged with additional State law violations in connection with this traffic stop; however, when the instant federal charges were filed, North Carolina dismissed its charges in favor of such federal prosecution.

In any event, based upon the facts underlying the petitioner's federal charges, the Pre-Sentence Report recommended that he be assessed a four-point enhancement under §2K2.1(b)(5) since his violations of §922(g)(1) occurred in connection with his commission of additional felony offenses. The Report further

noted that the petitioner previously had been convicted of more than 20 offenses; thus, it assessed him with 15 criminal history points.

After reviewing his Pre-Sentence Report, on October 24, 2002, the "Government's Motion For Upward Departure" was filed. Such Motion pointed out, <u>inter alia</u>, that within the brief five-month period between August 2001 and January 2002, the petitioner was arrested on three separate occasions for drug charges, with two of those instances also involving his unlawful possession of firearms for which he was charged; that, the petitioner was on pre-trial release at the time the third offense and arrest occurred; and that notwithstanding the assessment of 15 criminal history points, the seriousness of the petitioner's record was not adequately reflected by that calculation since he had multiple convictions for which no points were assessed.

On October 25, 2002, the Court held a Factual Basis & Sentencing Hearing for the petitioner. During that Hearing, the petitioner advised the Court that he had reviewed his Pre-Sentence Report with his attorney and, other than a minor correction which was noted for the record, he had no objections to the Report. Thus, the Court adopted the subject Report, including the recommended four-point enhancement under §2K2.1(b)(5). The Court next found that the petitioner's Total Offense Level was 21, his Criminal History Category was VI, and

his range of exposure was 77 to 96 months imprisonment.

After hearing arguments from the parties concerning the government's Motion for an Upward Departure, the Court denied that Motion, and sentenced the petitioner to 96 months imprisonment. The petitioner timely gave his notice of appeal.

On appeal to the Fourth Circuit Court of Appeals, counsel for the petitioner generally argued that the Court had erred in imposing a 96-month sentence, but also sought a review of the entire record pursuant to Anders v. California, 386 U.S. 738 (1967). See United States v. Neal, No. 02-4988, slip op. at 2 (4th Cir. June 19, 2003). Not surprisingly, however, the Court of Appeals declined to review this Court's sentencing determination because it did not exceed either his Guideline range or the applicable 10-year statutory maximum term. Instead, the Court of Appeals affirmed the petitioner's conviction and sentence. Id. at 3.

Thereafter, on September 1, 2004, the petitioner filed the instant Motion to Vacate. Such Motion asserts, pursuant to the recent U.S. Supreme Court decisions in Blakely v. Washington, 542 U.S. 296 (2004)[1] and United States v. Booker and Fanfan, 125

---

[1] The Blakely decision clarified the ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000), explaining that for Apprendi purposes, the statutory maximum term was the maximum sentence that a State judge could impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

5

S.Ct. 738 (2005),[2] that the Court's four-point enhancement under §2K2.1(b)(5) was unconstitutional.  The petitioner also claims that he was subjected to ineffective assistance of counsel due to counsel's failure to challenge the subject enhancement on appeal as the petitioner had asked counsel to do.

On November 13, 2004, the "Government's Response And Motion For Summary Judgment" was filed.  By that combined pleading, the government argues that the petitioner's Motion to Vacate should be dismissed as a matter of law.

That is, the government first contends, based upon the Fourth Circuit's reasoning in United States v. Sanders, 247 F.3d 139, 147-48 (4th Cir.), cert. denied, 534 U.S. 1032 (2001), that neither Blakely nor Booker/Fanfan can be retroactively applied in this collateral attack on the petitioner's sentence.  Second, the government asserts that, contrary to his assertion, the petitioner's four-point enhancement was not imposed because he was convicted of the additional felonies which he committed while unlawfully possessing the two firearms in this case.  Rather, the government argues that the Court properly followed the Guidelines' "Application Notes" which direct that such enhancement be applied under circumstances where additional felonies were committed, such as in the instant case, whether or not the

---

[2] The Booker/Fanfan decision made the holding from Blakely applicable to sentences imposed under the U.S. Sentencing Guidelines, and concluded that the mandatory provisions of the Guidelines are unconstitutional to the extent that they permit judges to find facts relevant to sentencing.

6

petitioner ever was charged with or convicted of such additional felonies.

Third, the government argues that the petitioner's former defense attorney could not possibly have been ineffective for not having challenged the subject enhancement since the Court imposed its sentence in accordance with the Guidelines. Therefore, the government argues that there are no genuine issues of material fact left to be resolved, and that it is entitled to a judgment as a matter of law.

On February 7, 2005, the "Petitioner's Traverse To Government's Motion For Summary Judgment" was filed. By that document, the petitioner first contends, in reliance upon a decision from another jurisdiction, that the Booker/Fanfan case "may be retroactive"; therefore, he contends that he is entitled to relief on his claim of sentencing error. In the alternative, however, the petitioner argues that if this Court finds that the retroactivity question has not yet been resolved, summary judgment for the government still would be inappropriate because the retroactivity issue creates a genuine question of material fact which must be resolved.

Second, the petitioner asserts that his claim of ineffective assistance of counsel should prevail in any event because counsel refused to raise a issue which subsequently was determined to be a meritorious claim. Accordingly, the petitioner urges the Court

to deny the government's Motion for Summary Judgment.

Now, the Court has carefully reviewed these matters and determined, for the reasons set forth in the government's Response, and for the further reasons stated herein, that the petitioner's Motion to Vacate must be <u>denied</u> and <u>dismissed</u>.

## II. ANALYSIS

### 1. The decisions from Blakely and Booker/Fanfan cannot be retroactively applied in this collateral proceeding.

At the outset of its analysis, the Court finds that it must first put to rest the petitioner's assertion that the <u>Blakely</u> and <u>Booker/Fanfan</u> rulings can be retroactively applied in this collateral proceeding.

Indeed, the Supreme Court has not announced that its <u>Blakely</u> or <u>Booker/Fanfan</u> decisions are to be retroactively applied in collateral proceedings. Moreover, as the government has noted, in <u>United States v. Sanders</u>, 247 F.3d 139, 145-46 (4th Cir.), <u>cert. denied</u>, 534 U.S. 1032 (2001), the Fourth Circuit concluded that <u>Apprendi</u>,[3] the precursor to the <u>Blakely</u> and <u>Booker/Fanfan</u> decisions, could <u>not</u> be retroactively applied to cases on collateral review such as these proceedings. To be sure, the <u>Sanders</u> Court expressly noted that "the new rule announced in

---

[3]In <u>Apprendi</u>, the Supreme Court held that any factor other than a prior conviction, which increases the statutory maximum is an element of the offense which must be charged in the indictment and submitted to a jury for proof beyond a reasonable doubt (or admitted by the defendant).

8

Apprendi does not rise to the level of a watershed rule of criminal procedure which 'alter[s] our understanding of the bedrock elements essential to the fairness of a proceeding.'" Id. at 14 . Thus, under Teague v. Lane, 489 U.S. 288, 313 (1989),[4] the rule from Apprendi does not constitute an exception to the retroactivity bar.

Similarly, although the Fourth Circuit has not yet found it necessary to publish a case which makes this point, in United States v. Fowler, No. 05-6493, slip op. at 1 (4th Cir. June 17, 2005), the Court stated that "neither Booker nor Blakely announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review." Thus, even assuming that an application of the rulings from the foregoing cases would be favorable to the petitioner, this Court simply does not have authority to apply the rulings here.

### 2. **The Court did not err in imposing the subject four-point enhancement**.

The petitioner's enhancement cannot now be invalidated on the basis of either Blakely or Booker/Fanfan. Nevertheless, the Court still is left to determine whether such enhancement was erroneously imposed in any event.

On this point, the petitioner argues that the Court should

---

[4] In Teague, the Court set out a "three-step" test to determine when new rules of constitutional criminal procedure apply retroactively requiring, inter alia, that the rule "alter our understanding of the bedrock elements essential to the fairness of a proceeding" in order to be so applied.

9

not have added four points to his base offense level because he never was convicted of the conduct upon which the enhancement is based. However, the Application Notes" which accompany the subject provision clearly demonstrate that this claim is feckless.

To be sure, the petitioner pled guilty to two separate acts of unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. 922(g)(1). Under U.S. Sentencing Guideline §2K2.1(b)(5), district courts are directed to increase a defendant's base offense level by four when the firearm involved in the §922(g)(1) violation was possessed in connection with another felony offense. Moreover, Application Note 7 for §2K2.1(b)(5) defines a "felony offense" as any federal, state or local offense which is punishable by more than one year imprisonment, "whether or not a criminal charge was brought, or conviction obtained."

As reflected in the Court's factual recitation, the petitioner's unlawful possession of the firearms on the two occasions charged in this case did, in fact, include his commission of other felony offenses. In particular, the petitioner's unlawful possession of the 9mm rifle on August 20, 2001 (Count One) also involved his simultaneous commission of an assault with a deadly weapon. Likewise, the petitioner's unlawful possession of the .45 caliber handgun on January 24, 2002 (Count Two) also

10

involved his simultaneous illegal possession of more than ½ pound of marijuana. Consequently, in light of the law which existed at the time that the petitioner was convicted and sentenced, his base offense level was not erroneously enhanced.

### 3. **The petitioner cannot prevail on his claim that counsel was ineffective for not having challenged the four-point enhancement on appeal.**

Here, the petitioner asserts that his attorney was ineffective for having failed to challenge his four-level enhancement. As with his other claim, however, the record establishes that this allegation also is baseless.

First, as already has been noted, the Sentencing Guidelines expressly mandated the enhancement which was imposed here. Therefore, the Court did not err in its calculation of the petitioner's sentence.

Second, although the <u>Apprendi</u> decision was announced in 2000, at the time that this Court sentenced the petitioner in 2002, the Fourth Circuit had construed the term "statutory maximum" about which the <u>Apprendi</u> Court talked as the maximum provided by statute when additional judge-made findings were imposed. Indeed, by 2002, the Fourth Circuit consistently was affirming sentences which included uncharged sentencing enhancements, so long as those sentences did not exceed the maximum term which could have been imposed when such additional judge-made findings were included. See <u>United States v. Lewis</u>,

235 F.3d 215, 218-19 (4th Cir. 2000) (upholding the imposition of uncharged sentence enhancements which did not increase the sentence beyond that provided for by the statute of conviction); United States v. Kinter, 235 F.3d 192, 198-202 (4th Cir. 2000) (same), cert. denied, 532 U.S. 937 (2001).

In fact, even as re-cently as 2004, the Fourth Circuit concluded that the holding in Blakely did not invalidate the foregoing Guidelines sentencing practices. See United States v. Hammoud, 378 F.3d 426 (4th Cir.), vacated and remanded, 381 F.3d 316 (4th Cir. 2004).

Accordingly, since the law permitted the instant enhancement at the time that the petitioner was sentenced and at the time that his case was presented on appeal, counsel simply could not have been ineffective for having chosen not to challenge the Court's inclusion of that enhancement. To put it simply, on these facts the petitioner cannot demonstrate either prejudice or deficient performance as required under Strickland v. Washington, 466 U.S. 668, 687-91 (1984). Therefore, the petitioner's claim against counsel must fail.

### III. CONCLUSION

The record of this matter reflects that the petitioner is not entitled to any relief on his claims. Therefore, the government's Motion for Summary Judgment will be granted; and the petitioner's Motion to Vacate will be denied and dismissed.

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the government's Motion for Summary Judgment is **GRANTED;** and

2. That the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

**Signed: August 1, 2005**

*[Signature]*

Richard L. Voorhees
United States District Judge